UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          :

            -v-                    :
                                          05 Cr. 1311 (PAC)
MARVIN MCFOY,                      :

            Defendant.             :

- - - - - - - - - - - - - - - X

STATE OF NEW YORK              )
COUNTY OF NEW YORK             ) ss.:
SOUTHERN DISTRICT OF NEW YORK  )


        JAMES LEE, a Special Agent with the Drug Enforcement

Administration ("DEA"), hereby affirms under the penalties of

perjury, pursuant to 28 U.S.C. § 1746, as follows:

        1.   I am the case agent currently assigned to the

McFoy investigation.  As the case agent, in the course of my

investigation, I have spoken with witnesses and with other law

enforcement agents currently and previously assigned to the McFoy

investigation, and have reviewed various documents.  Because this

affirmation is being submitted for a limited purpose, I have not

included details of every aspect of this investigation.  Where

conversations or statements are related herein or documents

referenced, they are related in substance and in part.

        2.   Based on my review of documents and conversations

with law enforcement officers and other witnesses, I have learned

the following information concerning the investigation of Marvin

McFoy, and more specifically, the DEA's efforts to locate the defendant, both before the Indictment was returned on December 15, 2005, and subsequently.

### The DEA Investigation To Identify And Locate McFoy

3.    In or about the summer of 2005, Court-authorized interceptions began over a cellular telephone used by McFoy and over telephones used by others involved in a conspiracy to distribute narcotics.  During the course of these wiretaps, narcotics-related conversations between McFoy and others were intercepted.

4.    In or about the summer of 2005, other DEA agents and I were also engaged in surveillance of the members of the conspiracy, including McFoy.  On approximately six separate occasions, we observed that McFoy frequented the "Unity African Market," located at 60 East 174th Street, Bronx, New York, and determined that he resided at 1368 Sheridan Avenue, Bronx, New York.  Specifically, during a telephone conversation intercepted as part of the wiretaps, DEA agents heard McFoy stating that his address was 1368 Sheridan Avenue, Apartment 5C, Bronx, New York ("1368 Sheridan Avenue").

5.    In or about the summer of 2005, and again on February 25, 2008, I requested information from ConEdison about the subscriber of services for 1368 Sheridan Avenue.  I learned that the subscriber of services at that address for the last five

years was an individual named "Christopher Cournoo."  In or about
the spring of 2005 and again on February 25, 2008, I requested
information from the New York State Department of Motor Vehicles
for driver's license or registered vehicle information under the
name "Marvin McFoy."  I received no information that either a
driver's license had been issued to or that a vehicle had been
registered under the name, "Marvin McFoy."

            6.    In or about summer 2005, DEA agents caused to be
conducted a database search through which they learned that an
individual named "Marvin McFoy" was issued a driver's license by
the state of Georgia with the address 1120 Autumn Village Ct.,
Duluth, GA, 30096. Through that search, DEA agents also obtained
a date of birth and a photograph of McFoy.  By comparing the
photograph of "Marvin McFoy" with the person they were
surveilling, they confirmed that the person they had been
surveilling was the "Marvin McFoy" who had been issued a Georgia
driver's license.  That search also revealed that McFoy did not
have a driver's license issued by any other state, including New
York.  Based on the surveillance of McFoy in the Bronx in the
summer of 2005, along with McFoy's own statement intercepted over
the wiretap that he was living in the Bronx, I determined that
McFoy was not living at the address in Georgia.  Based on my
training and experience, I know that narcotics traffickers and
other criminals often obtain identification documents that

contain false information.  Thus, based both on my surveillance of McFoy in the Bronx and based on my training and experience, I concluded that the address on the driver's license issued to McFoy was not his true address.

7.    On or about July 29, 2005, using McFoy's name and date of birth, DEA agents caused to be conducted a search of known addresses for McFoy through a commercial database called "AutoTrack."  The only current address for McFoy listed was 1120 Autumn Village Ct, Duluth, Georgia (the "Georgia Address").

8.    From the beginning of December 2005 to in or about December 15, 2005, on approximately two to three instances, other law enforcement agents and I conducted surveillance of the Unity African Market and of 1368 Sheridan Avenue.  We did not observe McFoy at either location.

9.    On or about December 15, 2005, a grand jury sitting in the Southern District of New York returned an indictment charging McFoy and two co-defendants with narcotics violations.  Arrest warrants issued for all three defendants. From that date until in or about early January 2006, on approximately three instances, other law enforcement agents and I conducted surveillance of the Unity African Market and of 1368 Sheridan Avenue.  We did not observe McFoy at either location.

10.    On the last occasion during which we surveilled 1368 Sheridan Avenue, in early January 2006, we went to Apartment

5C at approximately 7:30 a.m. and knocked on the door.  No one answered the door.  I pushed open the door by a few inches.  I observed that the room had no furniture, and it appeared that no one was living there.  Based on the surveillance conducted both at the Unity African Market and at 1368 Sheridan Avenue, I concluded that McFoy was no longer living in the Bronx.  Based on my training and experience, as well as other evidence obtained during the investigation, other law enforcement agents and I suspected that McFoy had traveled to Ghana.  Specifically, during the course of this investigation, in or about July 2005, one of McFoy's co-conspirators ("CC-1") was arrested with approximately 460 grams of heroin and $16,000 in cash.  DEA agents monitoring the phones for which we had received court-authorization to intercept overheard McFoy's other co-conspirators, including his co-defendants, discussing the arrest of CC-1.  In earlier intercepted communications, we had heard these co-conspirators frequently exchanging information with McFoy regarding the narcotics conspiracy. We, therefore, concluded that McFoy, too, was aware of the arrest of CC-1, was concerned that there were charges pending against him, and decided to vacate his premises to evade law enforcement detection.

11.  On or about January 5, 2006, I requested that the United States Marshals Service ("USMS") have the Federal Arrest Warrant for McFoy entered into the National Crime Information

Center database ("NCIC"), the national computerized data bank operated by the FBI that assists criminal justice agencies in all 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, and Canada, as well as other federal agencies, with law enforcement missions, including the identification and apprehension of wanted persons. I was informed that the USMS could not take primary responsibility for executing the warrant, and that the DEA would retain primary responsibility for executing the warrant.

12. Based on my training and experience, I know that the Department of Homeland Security ("DHS") only maintains records of individuals entering the United States and not of individuals leaving the United States. On or about January 5, 2006, I requested information from DHS regarding whether McFoy re-entered the United States. According to DHS, McFoy had not re-entered the United States. I contacted DEA's Lagos, Nigeria Country Office ("Lagos Office"), which is responsible for covering investigations in Ghana, regarding the outstanding arrest warrant for McFoy, and they agreed to help determine whether McFoy had entered Ghana. The Lagos Office had no information on whether McFoy had entered Ghana.

13. On or about August 9, 2006, again in March 2007, and on or about October 2, 2007, I caused to be conducted a records check through NCIC, which showed only that McFoy was still a DEA fugitive. At or around that each of those times, I

caused to be conducted an "Autotrack" search for McFoy, which
showed only the Georgia Address, which had been identified back
in July 2005.

14.  On or about August 9, 2006, and on or about
October 2, 2007, other DEA agents and I coordinated with the
Lagos Office, which in turn had been coordinating efforts with
the Ghana Narcotics Control Board, to determine the whereabouts
of McFoy.  The Lagos Office was unable to determine the
whereabouts of McFoy.

15.  On or about November 5, 2007, Deputy United States
Marshals of the United States Marshals Service attempted to
locate a fugitive not related to this case who was known to
frequent Sankosa African Restaurant, located at 2254 Webster
Avenue, Bronx, New York.  The Deputy United States Marshals
interviewed McFoy at that location, and conducted a warrant check
under his name.  They learned that there was an outstanding
warrant for McFoy, and placed him under arrest.

16.  On or about March 5, 2008, I spoke with a Special
Agent with Immigration and Customs Enforcement who told me the
following:

a.  Form I-130 is a petition filed with the
United States Citizenship and Immigration Service ("CIS") to
request the issuance of a visa for an alien relative.  Once that
petition is granted and the visa is issued, the alien relative
can then file an I-485, which is a petition to adjust status to

lawful permanent resident.  After an alien files the I-485, he is fingerprinted, and CIS performs a background and criminal history check at that time.  The filing of the Form I-130 on behalf of the alien does not trigger any background check for the alien to whom the visa would be issued.

        b.    The I-130 filed on behalf of Marvin McFoy has not been approved, and he has not applied to adjust his status to lawful permanent resident.  As such, McFoy has not been fingerprinted, nor has CIS conducted a background and criminal history check on him.

        I declare under penalties of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.


New York, New York

Dated: March 10, 2008


SPECIAL AGENT JAMES LEE
DRUG ENFORCEMENT ADMINISTRATION